| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | DISTRICT OF ALASKA |

| | | |
|---|---|---|
| 3 | UNITED STATES OF AMERICA, ) | Case No. 3:10-cr-00108-01-RRB |
| | ) | |
| 4 | Plaintiff, ) | Fairbanks, Alaska |
| | ) | Friday, April 1, 2011 |
| 5 | vs. ) | 8:59 o'clock a.m. |
| | ) | |
| 6 | DAMIEN MINGARELLI, ) | **PROPOSED CHANGE OF PLEA** |
| | ) | |
| 7 | Defendant. ) | |
| 8 | _____ ) | |

9        **TRANSCRIPT OF PROCEEDINGS**

10        BEFORE THE HONORABLE RALPH R. BEISTLINE
          UNITED STATES CHIEF DISTRICT JUDGE
11

12    APPEARANCES:

13    For the Plaintiff:          JOSEPH BOTTINI, ESQ.
                                  U.S. Attorney's Office
14                                222 West 7th Avenue, #9
                                  Anchorage, Alaska   99513-7567
15                                (907) 271-5071

16    For the Defendant:          ROBERT JOHN, ESQ.
                                  Law Office of Robert John
17                                P.O. Box 73570
                                  Fairbanks, Alaska   99707
18                                (907) 456-6056

19    Probation Officer:          MATT JEDROSKO
                                  U.S. Pretrial Service/Probation
20                                  Office
                                  222 West 7th Avenue, #48
21                                Anchorage, Alaska   99513
                                  (907) 271-5492
22

23    Court Recorder:             JODY EVANS
                                  U.S. District Court
24                                101 12th Avenue, Room 332
                                  Fairbanks, Alaska   99701
25                                (907) 451-5792

༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄༄
**NoDak Rose Transcripts**
*721 North 19th Street*
*Bismarck, North Dakota 58501-1721*
*(701) 255-1054 ໐ nodak@btinet.net*

```
1   Transcription Service:        NODAK ROSE TRANSCRIPTS
                                  721 North 19th Street
2                                 Bismarck, North Dakota  58501
                                  (701) 255-1054
3
    Proceedings recorded by electronic sound recording.
4   Transcript produced by transcription service.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    FAIRBANKS, ALASKA – FRIDAY, APRIL 1, 2011

2        (Call to Order of the Court at 8:59 a.m.)

3        (All parties present; defendant present)

4        THE CLERK:  All rise.  His Honor the Court, the

5    United States District Court for the District of Alaska is now

6    in session, the Honorable Ralph R. Beistline presiding.

7    Please be seated.

8        THE COURT:  Good morning.

9        MR. JOHN:  Good morning, Your Honor.

10        MR. BOTTINI:  Good morning, Your Honor.

11        MR. JOHN:  Morning, Your Honor.

12        THE COURT:  We're on the record in United States of

13    America v. Mingarelli.  It's Case 3:10-108.  Parties intend to

14    enter a guilty plea this morning, is that right, Mr. John?

15        MR. JOHN:  Yes, Your Honor.  He will be pleading

16    guilty to count one of the Indictment.

17        THE COURT:  And without a -- without a plea

18    agreement?

19        MR. JOHN:  Yes.

20        THE COURT:  Okay.  Okay.  Sir, your name is Damien

21    Mingarelli, is that true?

22        THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

23        THE COURT:  And you can just remain seated and be

24    comfortable.  I have to ask you some questions, it has to be

25    under oath, and the purpose of this question is to make sure

1   you understand what's going on here, okay?  So, if you'll

2   stand -- now you can stand -- and she'll swear you in.

3           THE CLERK:  Please raise your right hand.

4           **DAMIEN MINGARELLI, DEFENDANT, SWORN**

5           THE CLERK:  Okay.  Please be seated.  For the

6   record, can you please state and spell your full name?

7           THE DEFENDANT:  Damien Mingarelli.  It's

8   D-A-M-I-E-N.  Last name Mingarelli, M-I-N-G-A-R-E-L-L-I.

9           THE COURT:  Okay, sir.  Now, where do you live now?

10          THE DEFENDANT:  I live in Las Vegas.

11          THE COURT:  Okay.  Can you just give us your

12  address?

13          THE DEFENDANT:  Oh, 10289 Burwood Street, Las Vegas,

14  Nevada, 89178.

15          THE COURT:  Okay.  So, that's your -- that's your

16  home now?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Okay.  You just flew up here for this,

19  is that right?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  You know you're under oath now,

22  so you have to respond truthfully to the questions I ask.  Do

23  you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  If you don't, you can be charged

1  with perjury or some other felony.  You understand all that?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.  Well, let's start off.  How old

4  are you?

5            THE DEFENDANT:  I'm twenty-seven years old.

6            THE COURT:  And what do you do in Las Vegas?

7            THE DEFENDANT:  I'm a computer programmer.

8            THE COURT:  Okay.  And do you have a job there?

9            THE DEFENDANT:  Yeah.  I work for a company, Realty

10  Boutique.

11            THE COURT:  Okay.  How long have you worked for

12  them?

13            THE DEFENDANT:  About a year and a half now.

14            THE COURT:  Okay.  What's the extent of your

15  education?

16            THE DEFENDANT:  High school.  Graduated with honors,

17  and I have some college.

18            THE COURT:  Okay.  What's your connection to Alaska?

19            THE DEFENDANT:  I've --

20            THE COURT:  Have you lived here?

21            THE DEFENDANT:  No, no.

22            THE COURT:  Okay.  You've never spent any time here.

23            THE DEFENDANT:  I spent a few months here.

24            THE COURT:  Okay.  But you never worked here, you

25  didn't go to school here?

1      THE DEFENDANT:  My -- my wife lives out here.

2      THE COURT:  Okay.

3      THE DEFENDANT:  Or my wife lived out here.  She

4  lives in Vegas now.

5      THE COURT:  So, your connection was your wife.

6      THE DEFENDANT:  Yes, sir.

7      THE COURT:  Okay.  And you've had -- so, you've had

8  plenty of education, so you can read and you can write and you

9  can understand all this, is that true?

10      THE DEFENDANT:  Yes, Your Honor.

11      THE COURT:  Okay.  What about drugs?  Are you under

12  the influence of anything right now?

13      THE DEFENDANT:  No, Your Honor.

14      THE COURT:  Medicine?

15      THE DEFENDANT:  No, Your Honor.

16      THE COURT:  You're clean and sober and -- any reason

17  I should be concerned about your mental or emotional stability

18  at this time?

19      THE DEFENDANT:  No, Your Honor.

20      THE COURT:  Okay.  Well, you know you've been

21  charged here with a felony.  Do you understand that?

22      THE DEFENDANT:  Yes, Your Honor.

23      THE COURT:  And it's conspiracy to launder proceeds

24  of unlawful distribution of controlled substances.  So, that's

25  the crime.  Do you understand that?

1         THE DEFENDANT:  Yes, Your Honor.

2         THE COURT:  And every crime is made of -- of

3    elements, that's what the -- that's the -- that's what the

4    Government has to prove.  In this particular case, it looks

5    like there's three elements to this particular crime -- one,

6    two, three, four, five elements to this crime.  That means

7    three -- five things that the Government would have to prove

8    in order to convict you of this crime.  Do you understand

9    that?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  So, here's what they'd have to prove:

12   First, that you conspired with others known or unknown --

13   someone else, okay?  They'd have to prove that you conspired

14   to conduct financial transactions affecting interstate or

15   foreign commerce; that's the second thing, okay?  That you

16   conspired with someone else to conduct financial transactions

17   affecting interstate commerce.  You with me so far?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  The third thing they'd have to prove is

20   that this transaction involved proceeds of a specified

21   unlawful activity, the unlawful distribution of controlled

22   substances.  With me still?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  That's the third element.  Fourth

25   element is that you did this with the intent to promote the

1  carrying on of the unlawful distribution of controlled

2  substances.  Okay?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And the fifth thing they have to prove

5  is that you did this knowing that the money involved in the

6  financial transactions represented the proceeds of some form

7  of unlawful activity.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  You've got it?  That's the five things

10  the Government would have to prove to a jury.  Do you

11  understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  I tell juries all the time, if the

14  Government proves the elements of a charge, they have to find

15  you guilty, okay?

16          THE DEFENDANT:  Okay.

17          THE COURT:  I also tell them that if the Government

18  is unable to prove any one of the elements beyond a reasonable

19  doubt, they have to find you not guilty.  Do you understand

20  that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  So, that's kind of the rules of the

23  game.  You're fully aware of that.

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And you discussed all this with your

1    attorney?

2             THE DEFENDANT:  Yes, Your Honor.

3             THE COURT:  Are you satisfied with the legal

4    representation that you received?

5             THE DEFENDANT:  Yes, Your Honor.

6             THE COURT:  Okay.  Do you think you and your

7    attorney have sufficient information at this time to go ahead

8    and plead guilty this morning?

9             THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Okay.  Okay.  So, if you plead guilty,

11   then we won't have a trial.  The next thing we do is come back

12   and -- and impose the sentence, and that's basically done by

13   looking at the sentencing guidelines.  Do you understand that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  I have a book around here somewhere, the

16   United States Sentencing Guidelines.  That gives me a starting

17   point and a range, and then I can go up or down, depending on

18   any number of other factors.  Do you understand all that?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Okay.  Now, let's see.  In this

21   particular case, there's been no plea agreement and no written

22   agreements between you and the Government as far as I know.

23   Is that your understanding as well?

24            THE DEFENDANT:  Yes --

25            MR. JOHN:  Yes.

1        MR. BOTTINI:  Yes, Your Honor.  That is correct.

2        THE COURT:  Okay.  But you are going -- you're going

3   to go ahead and plead guilty this morning, is that right?

4        THE DEFENDANT:  Yes, sir.  Yes.

5        THE COURT:  This decision to plead guilty, is this

6   something you're doing freely and voluntarily?

7        THE DEFENDANT:  Yes.

8        THE COURT:  No one's threatening you or forcing you

9   or anything like that, are they?

10       THE DEFENDANT:  No.

11       THE COURT:  And you know if you plead guilty, that

12  means you're not going to go to trial, and the next time I see

13  you will be at sentencing.  Do you understand that?

14       THE DEFENDANT:  Yes, Your Honor.

15       THE COURT:  Okay.  Have you ever gone to trial

16  before?

17       THE DEFENDANT:  No.

18       THE COURT:  Okay.  Let me just briefly tell you a

19  little bit about what it would involve.  If you were to go to

20  trial, you'd be entitled to an attorney throughout the whole

21  process; before the trial, during the trial, and after the

22  trial.  Do you understand that?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Be presumed innocent and the Government

25  would have to prove you were guilty beyond a reasonable doubt.

1  Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  They'd have to convince a jury -- that

4  would be twelve people that would sit right over there,

5  randomly selected from the community, and all of them would

6  have to be convinced that you were guilty.  Do you understand

7  that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And the way the Government would attempt

10  to do that is they'd bring witnesses in and they'd testify

11  from this chair to my left.  They'd be sworn in and they'd

12  testify and then your attorney could cross-examine those

13  witnesses, and when that was done, you could bring in your own

14  witnesses or you could testify at trial if you wanted to.  Do

15  you understand all that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  If you -- if you wanted to go to trial

18  but you didn't want to testify, that would be fine also, and

19  we would tell the jury they couldn't hold that fact against

20  you.  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Okay.  All right.  So -- and I think I

23  told you all the jurors -- it would have to be a unanimous

24  verdict in order to be guilty.  Do you understand that?

25          THE DEFENDANT:  Yes, sir.

1      THE COURT:  Okay.  So, you know by pleading guilty

2   here today, you give up all those rights because you're not

3   going to go to trial.

4      THE DEFENDANT:  Yes, Your Honor.

5      THE COURT:  Okay.  And you know that we come back

6   here, I pose the -- impose the sentence.  You may not like the

7   sentence you get.  Do you understand that?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  That doesn't mean you can't say, oh, I

10  change my mind, I want to plead innocent.  Once you plead

11  guilty, you're stuck with that.  Do you understand that?

12     THE DEFENDANT:  Yes, sir.

13     THE COURT:  You can't change your plea just because

14  you don't like the sentence you get.  Do you understand that?

15     THE DEFENDANT:  Yes, sir.

16     THE COURT:  Okay.  And you know that this particular

17  charge is a felony.  Do you understand that?

18     THE DEFENDANT:  Yes, Your Honor.

19     THE COURT:  That carries consequences right there.

20  One consequence is for the rest of your life, you cannot

21  possess a firearm.  Do you understand that?

22     THE DEFENDANT:  Yes, Your Honor.

23     THE COURT:  For a period of time -- not forever, but

24  for a period of time, you can't vote, you cannot -- you can't

25  serve on a jury, can't run for public office, and you might be

1  ineligible for certain federal grants as a result of being a

2  felon.  Do you understand that?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  Okay.  And then the sentence -- a part

5  of the -- let's see, what is the sentence, what we're talking

6  -- let me, let me -- let me just outline the -- and counsel

7  for the Government, if I say anything that's wrong, you tell

8  me, but I think I stated the elements accurately.  Did you --

9  were you with me then?

10         MR. BOTTINI:  I was following Your Honor and you did

11  state them accurately.

12         THE COURT:  Okay.  So, let me make sure I state the

13  maximum sentence accurately as well.  My understanding is that

14  for the crime of conspiracy to launder proceeds of the

15  unlawful distribution of controlled substance, the maximum

16  sentence is twenty years in prison, there's a maximum fine of

17  five hundred thousand dollars, there's a one-hundred-dollar

18  mandatory special assessment, and there's up to five years of

19  supervised release.  That's my understanding of the maximum

20  sentence.  Is that counsel's understand as well?

21         MR. BOTTINI:  That is correct, Your Honor.

22         MR. JOHN:  Yes, Your Honor.

23         THE COURT:  Okay.  All right.  Sir, so we -- that's

24  the maximum.  You know, I doubt you'll get the maximum, but,

25  you know, that's what you're facing.  Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Any questions about the sentence?

3          THE DEFENDANT:  No.

4          THE COURT:  When you -- so, we come back here, you

5 get sentenced, you serve your time in some federal

6 penitentiary somewhere in the United States.  Do you

7 understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Then you get -- in the federal system,

10 there's no parole, so you have to serve the whole sentence

11 less any good time you might earn.  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Then when you get out of jail, you are

14 on what they call supervised release, okay?  You with me so

15 far?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And that could be -- it says here it

18 could be up to five years -- so I guess that's the maximum,

19 five years of supervised release.  That means for a period of

20 time, you're going to report to your probation officer, you've

21 got to stay out of trouble, you've got to do whatever's

22 required of you.  If you do, no problem, but if you don't, you

23 could go back to jail for an additional period of time in

24 addition to the sentence initially imposed.  Do you understand

25 that?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  Okay.  I've been running through this

3  fairly quickly.  You seem to be with me.  You sound like

4  you've talked to your attorney about this all.  Do you have

5  any questions about any of this at all?

6    THE DEFENDANT:  No, Your Honor.

7    THE COURT:  Pretty clear?  Pretty straightforward?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  Okay.  Let's see here.  You know what

10  supervised release is about.  We're not -- there's no

11  restitution, there's no sentencing agreements, there's no

12  parole, you understand that.  Okay.  And I -- I -- I can't

13  tell you what the sentence is because I just, frankly, don't

14  know what the sentence is.  I mean, I just don't know.  I can

15  tell you it won't be more than twenty years because that's the

16  maximum, but that's all I can tell you, okay?

17    THE DEFENDANT:  Okay.

18    THE COURT:  Okay.  So, what I'm going to have the --

19  have happen now is I'm going to have the Government attorney

20  set forth the facts that he believes he could prove if the

21  matter were to go to trial.  I ask you to listen to those

22  facts and then if they're true, I'll ask you are they true.

23  If they are, tell me, and then if they are true, I'll ask you

24  for your plea, okay?

25    THE DEFENDANT:  Okay.

1    THE COURT:  Okay.  Counsel?

2    MR. BOTTINI:  Yes, Your Honor.  If the case were to

3    proceed to trial, we would prove that between on or about

4    December 5th, 2008, and continuing until on or about April

5    27th, 2009, Mr. Mingarelli was involved in a conspiracy with

6    others known and unknown in the District of Alaska and

7    elsewhere to launder the proceeds of the unlawful distribution

8    of controlled substances.

9    We would show that during this time frame, Mr.

10   Mingarelli was associated with a group of individuals who were

11   unlawfully distributing OxyContin in the Fairbanks area, and

12   that OxyContin is in fact a controlled substance that may only

13   be sold by prescription.

14   Specifically, we would show that Mr. Mingarelli

15   would arrange for the shipment of the OxyContin pills from Las

16   Vegas (indiscernible) to Fairbanks.  The pills would then be

17   sold or distributed by others in the Fairbanks area.  Some of

18   those other individuals would then launder the proceeds of

19   these sales by wire transferring money to Mr. Mingarelli and

20   others in Las Vegas or by depositing sale proceeds directly to

21   bank accounts held by Mr. Mingarelli at Wells Fargo Bank.

22   We would show that between December 5th, 2008, and

23   April 27th, 2009, Mr. Mingarelli and others received either

24   through wire transfers or by funds deposited into his bank

25   accounts approximately one hundred and forty-six thousand four

1   hundred and twenty-seven dollars and thirty-six cents

2   [$146,427.36] in funds that represented the proceeds of the

3   unlawful distribution of OxyContin.

4          We would show that the wire transfers and deposits

5   affected interstate commerce, and that the financial

6   institution or wire transfer services utilized transacted

7   business in interstate commerce.

8          We would show that the money laundering transactions

9   were intended in part to carry on or to promote -- I'm sorry

10  -- promote the carrying on of the unlawful distribution of

11  controlled substances.

12         And finally, we would show that Mr. Mingarelli in

13  fact knew that the money that he and others received either

14  through these wire transfers or from the money deposited into

15  his bank accounts in fact represented the proceeds of unlawful

16  OxyContin sales.

17              THE COURT:  Hear all that?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Is it true?

20              MR. JOHN:  Your Honor, before Mr. Mingarelli answers

21  that --

22              THE COURT:  Uh-huh (affirmative).

23              MR. JOHN:  -- the one issue that may arise is that

24  some of the hundred and forty-six thousand four hundred and

25  twenty-seven dollars and thirty-six cents [$146,427.36] may be

1  legitimate proceeds and not the OxyContin proceeds.  I'm just

2  letting the Court know that may be an issue during the

3  sentencing --

4          THE COURT:  So, what you're saying is you're

5  disputing the amount of money.

6          MR. JOHN:  Yes.  That would be -- that would be the

7  only issue --

8          THE COURT:  Is that an element?  That -- I don't

9  think that's an element.

10          MR. JOHN:  It's not an element.  I'm just letting

11  the Court know that ahead of time, so if Mr. Mingarelli admits

12  the charges --

13          THE COURT:  Okay.

14          MR. JOHN:  -- he's not admitting that that's the

15  exact -- that it's necessarily that much.

16          THE COURT:  Okay.  And what's the Government's

17  response to that?

18          MR. BOTTINI:  Your Honor, the -- the -- the amount

19  is not in fact an element of the offense charged, and Mr. John

20  and I did discuss this before the hearing this morning.  I

21  don't think that Mr. Mingarelli taking the position that he

22  wants to contest the total amount means that he cannot enter a

23  plea to the facts that have been recited here.

24          THE COURT:  Okay.  So, other than the dollar figure

25  that we're talking about, is everything else true?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  And so you admit that you did everything

3  that they said you did, right?

4      THE DEFENDANT:  Yes, Your Honor.

5      THE COURT:  Okay.  So, you've been charged here in

6  -- in the Indictment of a conspiracy to launder proceeds of

7  unlawful distribution of controlled substances.  That's count

8  one.  That's the only count in the Indictment.  How do you

9  plead, guilty or not guilty?

10      THE DEFENDANT:  Guilty.

11      THE COURT:  Okay.  Let me ask you a couple of

12  questions.  What is -- what are the parties' thoughts with

13  regard to his bail situation between now and sentencing?

14      MR. BOTTINI:  Your Honor, he -- he was admitted to

15  bail initially, I believe, upon his arrest in Las Vegas back

16  in November, and we chose not to -- to contest that.  He's

17  been compliant as far as I know with all of the conditions

18  that have been set as far as securing his release.  So, at

19  this point, we wouldn't have any opposition to him remaining

20  on bond pending sentencing.

21      THE COURT:  Okay.  Do you understand what they just

22  said?  Technically -- you know, frequently, when someone

23  pleads guilty, they go to -- they go to jail and wait until

24  sentencing.  The Government said that -- that you've got bail

25  conditions, you seem to have followed them, so they're not

1  going to request that you be incarcerated at this time.  Do

2  you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  However, if you mess up at any time

5  between now and sentencing, you go into jail and wait until

6  sentencing.  Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And if you don't show up for sentencing,

9  big trouble, because that's a whole other felony on top of

10 this.  Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  So, you get whatever time you get for

13 the drug deal.  On top of that you get -- I can't -- I don't

14 know what off the top of my head it is, but it's a significant

15 additional period of time for not showing up at sentencing.

16 Do you understand all that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  So, will you be here at sentencing?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.  After having this discussion and

21 looking at the file, it's the Court's conclusion that the

22 defendant is fully competent and capable of entering an

23 informed plea, that defendant is aware of his rights, that the

24 defendant's plea of guilty is made freely and voluntarily and

25 knowingly, no one has threatened him, the defendant is in

1    control of all of his faculties, knows what's going on,

2    understands what's going on, and the defendant has had the

3    advice of legal counsel and he's satisfied with the counsel

4    received.

5         Furthermore, the Court finds that the plea of guilty

6    is supported by the facts that were set forth by the

7    prosecutor just now over the telephone and that defendant

8    acknowledged to be true, and those facts would support a

9    finding of guilt with regard to each one of those elements

10   that we talked about earlier of this -- of the offense

11   charged.

12        So, the Court is, number one, going to accept the

13   guilty plea; number two, vacate the trial, so there won't be a

14   trial in this matter; number three, order a presentence report

15   and you and your attorney need to meet with the probation

16   officer.  I don't know how you're going to arrange that

17   because I don't think there's one in town today, but you can

18   do it telephonically or you can do it otherwise.

19        MR. JOHN:  Yeah, we're going to do it telephonically

20   later today, Your Honor.

21        THE COURT:  Oh, okay.  So, that's taken care of.  A

22   report will be generated, and I will use that report to

23   consider in part what an appropriate sentence is, okay?  Your

24   attorney can file objections, et cetera, et cetera, but then

25   we come back here, we will -- we'll impose the sentence.

1      Now, one question I had.  You have no connections to

2  Fairbanks other than your wife used to live here, is that it?

3      THE DEFENDANT:  Yes, Your Honor.

4      THE COURT:  And I'm trying to figure out where the

5  sentencing should be.  Should it be in Fairbanks or should it

6  be in Anchorage or have you even thought about it?

7      MR. JOHN:  Well, Your Honor, there are family

8  members here.  I think Fairbanks --

9      THE COURT:  I don't care.  I mean, I'm just saying

10  that --

11      MR. JOHN:  Right.  I was thinking it would be in

12  Fairbanks.  I know -- I haven't really talked about it with

13  (indiscernible - simultaneous speakers) --

14      THE COURT:  No, no, that's fine.

15      MR. JOHN:  -- her other family members here, the

16  parents of his wife and grandparents and other family members

17  still live in the North Pole area, so --

18      THE COURT:  Okay.

19      MR. JOHN:  -- as far as family and any connections

20  and a lot of expense that occurs, I think (indiscernible -

21  simultaneous speakers).

22      THE COURT:  No, the presumption is Fairbanks.  I'm

23  presuming Fairbanks unless someone would -- were to ask

24  otherwise.

25      MR. JOHN:  Yes.

1          THE COURT:  Okay.  So, we'll do it in Fairbanks.

2     You know, sir, when you come here, you'll get sentenced and

3     highly likely you'll be remanded to custody.  Do you

4     understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  So, I'll set sentencing for

7     Fairbanks for June 17th, 2011, at 11 o'clock in the morning.

8          MR. JOHN:  Your Honor, I had discussed this with Mr.

9     Bottini.

10          THE COURT:  Yeah.

11          MR. JOHN:  Mr. Mingarelli got married recently and

12     his wife is expecting their first child on June 29th, and Mr.

13     Bottini had graciously agreed to put the sentencing off until

14     the beginning of August to allow him to experience the birth

15     of his child and perhaps a little time thereafter.

16          THE COURT:  Hmm.  I don't have my calendar that far

17     in advance.  Let me think.  But I'll go get it.  Let's just

18     stand in recess for a second, okay?

19          MR. JOHN:  Okay.

20          THE CLERK:  Off record.

21       (Off record, at 9:18 a.m.)

22       (On record, at 9:20 a.m.)

23          THE CLERK:  All rise.

24          THE COURT:  Okay.  August 5th, 2011, at 9:00 a.m. --

25     9:30 a.m., okay?

1          MR. JOHN:  Yes, Your Honor.

2          THE COURT:  This is highly unusual.  You're getting

3  a real break, you understand that?  So, I don't want you to --

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  -- mess up one bit, okay?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  So, you have to be here in

8  Fairbanks August 5th and we're going to meet at 9:30 in the

9  morning, and we're going to do the sentencing, okay?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Okay.  Let's see.  I think that covers

12 everything.  Anything else from the Government?

13         MR. BOTTINI:  Nothing further, Your Honor.  Thank

14 you.

15         THE COURT:  Mr. John, anything else?

16         MR. JOHN:  Not at this time, Your Honor.

17         THE COURT:  All right.  Sir, do you understand

18 what's going on now?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  You pled guilty, you've been adjudicated

21 as guilty for this crime, you're going to be sentenced here in

22 August, and then when you come here, you know, plan on going

23 to jail for whatever the time period is, okay?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And stay out of trouble between now and

1  then.

2          THE DEFENDANT:  Okay.

3          THE COURT:  Thank you very much.

4          MR. JOHN:  Thank you, Your Honor.

5          THE DEFENDANT:  Thank you, Your Honor.

6          THE CLERK:  All rise.  This matter is now adjourned.

7  This Court's in recess until 10:00 a.m.

8      (Proceedings concluded at 9:21 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **CERTIFICATE**

2    I certify that the foregoing is a correct transcript from the
     electronic sound recording of the proceedings in the above-
3    entitled matter.

4

5        /s/ D. Kathleen Stegmiller                    05/14/2012
     D. Kathleen Stegmiller, Transcriber                 Date

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25